UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| BARBARA McCORKLE and | ) | | |
| WILLIAM DEAN McCORKLE, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:11-CV-168 |
| | ) | | (VARLAN/GUYTON) |
| TENNESSEE VALLEY AUTHORITY, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

This is a negligence action in which plaintiffs, husband and wife Barbara McCorkle and William Dean McCorkle, seek recovery from defendant, Tennessee Valley Authority ("TVA"), for injuries Mrs. McCorkle sustained while visiting the recreational area at TVA's Cherokee Reservoir in Jefferson City, Tennessee [Doc. 1-2, ¶¶ 5, 7, 8]. Mr. McCorkle also seeks to recover for Mrs. McCorkle's injuries [*Id.*, ¶¶ 20-21]. This action is presently before the Court on TVA's Motion for Summary Judgment [Doc. 5], pursuant to Federal Rule of Civil Procedure 56, in which TVA moves the Court for summary judgment on all plaintiffs' claims on grounds that there is no dispute as to any material fact and TVA is entitled to judgment as a matter of law. Plaintiffs have not filed a response to the motion for summary judgment and the time for doing so has passed. *See* E.D. TN. LR 7.1(a), 7.2. Pursuant to Local Rule 7.2, "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. TN. LR 7.2.

After reviewing the complaint, TVA's motion, and the supporting documents and exhibits, all in light of the relevant and controlling law, the Court finds TVA's motion for summary judgment [Doc. 5] well-taken and it will be **GRANTED** for the reasons stated herein.  Plaintiffs' claims will therefore be **DISMISSED** and this case will be **CLOSED**.

I.      **Relevant Facts and Background**

TVA owns and operates the Cherokee Reservoir (the "Reservoir") [Doc. 1-2, ¶ 5; Doc. 5-3, ¶ 2].  The Reservoir is open to the public for recreational use and it makes available, free of charge, public recreational facilities including a "campground, children's play equipment, picnic and pavilion areas, swimming areas, and boat ramps." [Doc. 1-2, ¶ 5; Doc. 5-3, ¶¶ 2, 4].

On August 2, 2010, Mrs. McCorkle visited the Reservoir, as she has done on several previous occasions, with two of her sisters [Doc. 5-1, pp. 4; Doc. 5-2, p. 4].  The women planned to meet a third sister and her husband who were towing a boat to the Reservoir for an outing [Doc. 5-1, p. 8].  Upon arriving at the Reservoir, Mrs. McCorkle and her sisters walked from the parking area to a picnic pavilion, using one of the pavilion's benches to rest their picnic cooler [*Id.*, pp. 8, 9].

TVA maintains a public drinking fountain next to the picnic pavilion [Doc. 6, p. 3].  The drinking fountain is equipped with a spigot on one side and is surrounded by a concrete pad with a drain on the same side as the spigot [Doc. 5-3, ¶ 4; Doc. 5-4].  Mrs. McCorkle testified that she was familiar with the drinking fountain from her previous visits to the Reservoir and that she had used it before without any problem [Doc. 5-1, p. 7; Doc. 5-2, p.

2

5]. While TVA employees were present at the Reservoir on August 2, 2010, no TVA employee was stationed specifically at the picnic pavilion, nor was any TVA employee present at the picnic pavilion at the time Mrs. McCorkle and his sisters visited it [Doc. 5-3, ¶ 6].

Mrs. McCorkle and one of her sisters walked down from the picnic pavilion to the water while the other sister stayed with the cooler [Doc. 5-1, pp. 9, 10]. Mrs. McCorkle was wearing plastic slip-on shoes, also known as "Crocs," and a bathing suit [*Id.*, pp. 10, 11]. The two women got into the water [*Id.*, pp. 10, 12]. At some point, Mrs. McCorkle got an object stuck in her shoe [*Id.*, pp. 15, 16]. Mrs. McCorkle and her sister left the water and walked back up toward the picnic pavilion [*Id.*, p. 12]. Mrs. McCorkle headed directly to the drinking fountain next to the picnic pavilion to wash her foot [*Id.*, pp. 15, 16]. Mrs. McCorkle testified that as she approached the drinking fountain, she saw some standing water around the drain area of the fountain [*Id.*, pp. 13, 14]. Mrs. McCorkle could not tell how big the pool of water was, but she testified that it appeared very dirty [*Id.*]. According to Mrs. McCorkle, she stepped into the pool of water and her right foot went out from under her, causing her to fall onto the concrete pad [*Id.*, pp. 16, 17, 18, 25; Doc. 1-2, ¶ 8]. The fall resulted in an injury to her right wrist and right hip [Doc. 5-1, pp. 16, 17, 18].

Billy Hurd ("Mr. Hurd"), the foreman of the maintenance crew with responsibility for the Reservoir, had no notice of Mrs. McCorkle's accident until this lawsuit was filed [Doc. 5-3, ¶ 7], nor was any accident report made to the TVA police [Doc. 5-4, ¶ 4; Doc. 5-1, pp. 23, 24; Doc. 5-2, pp. 6, 7-8]. Mr. Hurd testified that since coming to the position of foreman

3

in January 2005, he had not received any report of an accident or injuries at the drinking fountain near the picnic pavilion [Doc. 5-3, ¶ 8]. The TVA police also have no record of an accident or injury occurring at the drinking fountain for the three years prior to August 2010 [Doc. 5-4, ¶ 5].

Plaintiffs filed this lawsuit in state court in April 2011 [Doc. 1-2], alleging that TVA "breached its duty of maintaining reasonably safe premises in that [it] . . . [e]nhanced the dangerous condition by failing to mark, highlight, or paint the area around the water fountain which further increased the likelihood of injury at this location." [*Id.*, ¶ 14(b)]. TVA removed the state-court lawsuit to this Court and filed the motion for summary judgment [Doc. 5]. As grounds for the motion, TVA asserts that (1) TVA did not violate the limited duty owed to recreational users of its premises under the Tennessee Recreational Use statutes, Tenn. Code. Ann. §§ 70-7-101 to -104 (2011), and (2) even if TVA breached a duty owed to Mrs. McCorkle, she bears most of the fault for her fall because she was aware of the pool of water around the drain at the drinking fountain and could have avoided it. Last, TVA argues that Mr. McCorkle's loss of consortium claims are derivative of Mrs. McCorkle's claims and should also be dismissed.

## II.  Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

5

### III. Analysis

#### A. The Tennessee Recreational Use Statutes Bar Plaintiffs' Claims

The Tennessee Recreational Use statutes establish the duty of care owed by TVA to Mrs. McCorkle under the facts of this case. *See* Tenn. Code Ann. §§ 70-7-101 to -104 (2011); *Spence v. TVA*, No. 3:05-0519, 2006 WL 1416759, at *4 (M.D. Tenn. May 17, 2006) (stating that the Tennessee Recreational Use statutes and the exceptions contained therein are applicable to TVA to establish the duty of care owed to a plaintiff). These statutes, which were intended to encourage landowners to open their lands for recreational uses, *see Cagle v. United States*, 937 F.2d 1073, 1075 (6th Cir. 1991), provide that:

> The landowner, lessee, occupant, or any person in control of land or premises owes no duty of care to keep such land or premises safe for entry or use by others for such recreational activities as hunting, fishing, trapping, camping, water sports, [etc.] . . . nor shall such landowner be required to give any warning of hazardous conditions, uses of, structures, or activities on such land or premises to any person entering on such land or premises for such purposes, except as provided in § 70-7-104.

Tenn. Code Ann. § 70-7-102(a) (2011).

Section 104 of the Tennessee Recreational Use statutes contains an exception to the "no duty of care" or to warn limitations set out in § 102: "[t]his part does not limit the liability that otherwise exists for . . . [g]ross negligence, willful or wanton conduct that results in a failure to guard or warn against a dangerous condition, use, structure, or activity[.]" Tenn. Code Ann. § 70-7-104 (2011). Under Tennessee law, gross negligence is a "negligent act done with utter unconcern for the safety of others, or one done with such a reckless

6

disregard for the rights of others that a conscious indifference to consequences is implied in law." *Leatherwood v. Wadley*, 121 S.W.3d 682, 693 (Tenn. Ct. App. 2003) (internal quotation and citation omitted). The test for negligence under Tennessee law involves the following elements: (1) a duty of care owed by a defendant to a plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). One engages in "willful or wanton conduct" when one commits an act that "involves deliberation and malice" or that exhibits "a heedless and reckless disregard for the rights of another person, with consciousness that a pertinent act or omission may result in injury to another." *Stofer v. Ramsey*, 558 F. Supp. 1, 3 (E.D. Tenn. 1982) (internal citations omitted).

Thus, pursuant to § 104, TVA had a duty to refrain from grossly negligent and willful or wanton conduct that would result in a failure to guard or warn against a dangerous condition, use, structure, or activity on TVA's land. However, plaintiffs do not allege in the complaint that TVA was grossly negligent, nor do they allege that TVA engaged in willful or wanton conduct. Rather, the complaint alleges that TVA negligently breached a duty to exercise reasonable care toward its visitors and guests by allowing the existence of a dangerous condition at the drinking fountain and by failing to "mark," "highlight," or "paint," the area around the fountain [Doc. 1-2, ¶¶ 13, 14].

Courts have previously held that TVA's failure to warn of a risk is not gross negligence or willful or wanton conduct. In *Hogan v. TVA*, No. CIV-3-82-414 (E.D. Tenn.

7

Nov. 18, 1982),[1] the plaintiff sued TVA for damages to his sailboat when the sailboat ran into an electric power transmission line located over a cove maintained by TVA. *Id.* at 1. TVA also maintained the transmission line, and the plaintiff alleged that TVA negligently failed to post the height of the transmission lines and failed to warn boaters of the potential danger of the low lines. *Id.* In considering the plaintiff's claim, the district court found that TVA was a "landowner" pursuant to the Tennessee Recreational Use statutes and therefore could "only be held liable for injury to plaintiff's boat if it willfully or with malice failed to guard or warn against a dangerous condition." *Id.* at 3. The district court reviewed the submitted evidence and concluded that there was no evidence upon which the jury could have found TVA liable for reckless disregard of the plaintiff's safety or "for willful or malicious misconduct." *Id.* at 3, 5. Accordingly, the district court set aside the jury verdict for the plaintiff, concluding that the evidence was insufficient to support the verdict. *Id.* at 5.

Similarly, in *Shaver v. TVA*, 565 F. Supp. 12 (E.D. Tenn. Oct. 7, 1982), the plaintiff alleged that he was injured by a rockslide while fishing from a dam owned and operated by TVA. *Id.* at 12-13. The plaintiff alleged that TVA either should have made the dam safe for persons fishing from it, or should have warned the public of the danger of a rockslide. *Id.* at 13. The district court granted TVA's motion for summary judgment, holding that as a landowner under the Tennessee Recreational Use statutes, TVA owed no duty of ordinary care to the plaintiff who had entered TVA's land for fishing purposes. *Id.* at 14-15. Finally,

---

[1]This is an unpublished case, *see* Doc. 6-1, pp. 30-34.

in *Matthews v. State*, No. W2005-01042-COA-R3-CV, 2005 WL 3479318 (Tenn. Ct. App. Dec. 19, 2005), the Tennessee Court of Appeals held that the Tennessee Recreational Use statutes barred the plaintiff's claim for injuries resulting from a fall caused by the irregular height of a sidewalk slab, agreeing with the finding of a claims commission that "the irregularity in the sidewalk was insufficient to constitute gross negligence or willful or wanton conduct." *Id.* at *4.

According to Mrs. McCorkle's testimony, she had visited the Reservoir several times before her accident and she was familiar with the drinking fountain from these previous visits [Doc. 5-1, p. 7]. Mrs. McCorkle testified that she saw a dirty pool of water at the base of the drinking fountain as she approached it, the size of which she cannot recall, that she stepped into the pool of water, and that she slipped and was injured [*Id.*, pp. 13-14, 16, 17-19]. TVA has submitted photographs of the drinking fountain and the pool of water from the date of the accident which show that the pool of water was small, that it was not hidden from plain sight, and that Mrs. McCorkle could reasonably have avoided it had she so chosen [*Id.*, pp. 25, 28, 29, 30]. Exhibit 11 to Mrs. McCorkle's deposition in particular demonstrates that she could have used the spigot on the fountain to wash her foot without walking through the pool of water or standing in it [*Id.*, p. 28]. Furthermore, as held in *Hogan*, *Shaver*, and *Matthews*, TVA will not be liable for failure to warn the public of a risk on TVA's land when there are no facts showing that the failure to warn was grossly negligent or arose out of willful and wanton conduct. Here, there are no alleged facts indicating gross negligence or willful or wanton conduct on the part of TVA.

9

Accordingly, the Court finds that TVA has shown that no genuine issue of material fact exists as to whether it breached its duty to Mrs. McCorkle. The Court also finds that no genuine issue of material fact exists as to whether TVA was grossly negligent or acted willfully or wantonly by failing to warn recreational users of the Reservoir that water could pool around the drinking fountain. In sum, the Court finds that TVA is entitled to summary judgment in its favor because there is no genuine issue of fact that TVA did not violate the limited duty owed to recreational users of its land under the Tennessee Recreational Use statutes.

Assuming, however, that TVA breached a duty owed to Mrs. McCorkle, the undisputed facts submitted by TVA show that her claims would still be barred. Under Tennessee law, a landowner is not an insurer of the safety of invitees onto its property and while a landowner has a duty to exercise reasonable care with regard to invitees, the invitees also have a duty not to proceed into a known danger. *See Eaton v. McLain*, 891 S.W.2d 587, 594-95 (Tenn. 1994). Tennessee also employs a system of modified comparative fault in which a plaintiff who is more than fifty percent at fault for an accident cannot recover. *McIntyre v. Balentine*, 833 S.W.2d 52, 57-58 (Tenn. 1992).

The undisputed facts show that Mrs. McCorkle proceeded into a known risk when she stepped into the pool of water near the drinking fountain. Federal and state courts have held, in factually similar cases, that a plaintiff's conduct in proceeding into a known risk precludes the plaintiff from recovering. *See, e.g., Berry v. Houchens Mkt. of Tenn. Inc.*, 253 S.W.3d 141, 148 (Tenn. Ct. App. 2007) (finding that the plaintiff was more than fifty percent

responsible for her injuries when she stepped into a puddle of oil in the defendant's parking lot, fell, and sustained injuries); *Easley v. Baker*, No. M2003-02752-COA-R3-CV, 2005 WL 697525, at *8 (Tenn. Ct. App. Mar. 24, 2005) (dismissing a slip-and-fall claim where the plaintiff sustained an injury after he walked into an obvious and easily avoidable puddle); *Johnson v. Wal-Mart Stores*, No. 1:08-CV-67, 2009 WL 540213, at *8 (E.D. Tenn. Mar. 4, 2009) (holding that the plaintiff could not recover for her slip-and-fall claim where she failed to avoid a hazard she had clearly observed); *Risher v. United States*, No. 08-2249, 2011 WL 61675, at *7 (W.D. Tenn. Jan. 7, 2011) (finding that the plaintiff's choice of a hazardous route around a hole when an alternative route was available barred his claim under Tennessee law).

Given the above standards and case law, the Court finds that the undisputed facts bar Mrs. McCorkle's claims. According to her testimony, Mrs. McCorkle saw the pool of water around the drinking fountain, yet she stepped into it regardless [Doc. 5-1, pp. 13-15]. The photographs from the date of the accident also show a small pool of water around the drinking fountain that could easily have been avoided and indicate that Mrs. McCorkle could have washed her foot in water from the spigot and avoided the pool of water entirely [*Id.* at 25, 28, 29, 30]. In sum, assuming TVA breached a duty owed to Mrs. McCorkle, the undisputed facts show that she bears most of the fault for her fall since she was aware of the pool of water around the drinking fountain and could easily have avoided it.

11

### B. Mr. McCorkle's Claims

Mr. McCorkle alleges claims against TVA for loss of "the society and companionship of his wife" and asserts that he has "lost significant wages to care for his wife." [Doc. 1-2, ¶¶ 20, 21]. These are loss of consortium claims. TVA correctly points out that under Tennessee law, loss of consortium claims are derivative claims, *see Hunley v. Silver Furniture Mfg. Co.*, 38 S.W.3d 555, 557 (Tenn. 2001) *and Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000), that is, Mr. McCorkle's claims are derivative of Mrs. McCorkle's claims in the sense that Mr. McCorkle's claims originate from Mrs. McCorkle's claims for her personal injuries. Accordingly, because Mr. McCorkle's claims for Mrs. McCorkle's injuries are derivative of her claims, his claims will likewise be dismissed. *See Greene v. Titi*, No. M2008-02788-COA-R3-CV, 2010 WL 98884, at *10-*11 (Tenn. Ct. App. Jan. 11, 2010) (affirming trial court's grant of summary judgment on consortium claim where the spouse's negligence claim failed as a matter of law).

### IV. Conclusion

For the reasons stated above, TVA's motion for summary judgment [Doc. 5] will be **GRANTED** and summary judgment will be **ENTERED** in favor of TVA on all plaintiffs' claims. Plaintiffs' claims will be **DISMISSED** and the Clerk of Court will be directed to **CLOSE** this case. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE